Next case, McCoy v. Walmart, so we'll just step right over into that case and ask you to open and welcome Donald Brown for the appellee. Thank you again, Your Honor, and may it please the court again. So this issue is the same arbitration provision, but Judge Phillips' ruling is on waiver, and we're going to focus in on the law regarding that and what the situation was. I mean, there is no doubt that our motion to compel arbitration was filed in terms of timing, 17 months or whatever the court observed into the case, but the case law is clear that delay alone is not a fact, is not sufficient to deny it. We did file a motion to dismiss at the beginning of the case, but we think it's important to focus in on what type of motion that was, and then also under this court's DuMont standard. I mean, our cases that we would hope the court would focus on would be DuMont and ABF Freight and then distinguishing Hooper. To me, that seems to be the situation that we're faced with. Mr. Bennett, I have a question to get you started. On your motion to dismiss, did you seek dismissal on any issue that pertained to the merits of the case? I guess not as we would define the merits, because the motion has several grounds. The first ground and primary overwhelming portion of it was personal jurisdiction, which is a well-recognized basis for not having a merits-based decision. The second driver for us in filing it was that there's a footnote in the complaint that says the consumer protection laws of 47 states are being invoked. And then we did file what we would call 12B6 motions directed at the pleadings, and all of those were, I think, subject to repleting at the end of the day. Rule 12 does say if you file one motion, which we had to file for personal jurisdiction or WAVE, you should bring your other issues in the same motion, and so we did bring 12B6 motions. It's conceivable that under some circumstances, you did seek dismissal under 12B6 for all of the claims. Is that correct? The one we did not mention is the key one. So Judge Phillips's footnote two specifically notes in her order that we did not actually raise any arguments regarding the issue of declaratory judgment. It's footnote three, I'm sorry. Defendants do not discuss count nine for declaratory judgment in their motion to dismiss, so the court will not address that. We did not mention that. So I think that that's a point that under the case law could be relevant to the court. The other point being is all of these pleading defects are ones that are cured by amendment. In fact, we have two different discovery hearings, but in one, the plaintiff's point in response to us was, Judge, this motion isn't the kind of motion that gets rid of the whole case. And three or four different times in McCoy, the plaintiff noted that, and I'll just quote it. It's appendix 135 and 136 that I think really go right to the heart of Judge Smith's question. The motion to dismiss will not, and the defendant will concede that if it were sustained, dispose of the case. Appendix 136, the motion to dismiss will not dispose of the vast majority of the amended complaint. Appendix 140, this motion is not a case killer. And so it was a classic motion directed at non-merits, which was, we were all, I mean, speaking as the person who filed the motion, I was extremely focused on not having a nationwide class and thinking that that was, you know, without merit or in our view, frivolous. I know the other side has a different perspective. But once you file your rule 12, you're supposed to file all of your rule 12 arguments or you risk a waiver of that. And so we were driven by personal jurisdiction and the pleadings would not resolve the entire case. Counsel, before you move on, I want to ask you an antecedent question to that. The Chief asked sort of an introductory question. I'm wondering, so we had a case the other day presenting a similar waiver issue, and we obviously need to decide these consistently with each other. And you obviously weren't the attorney in that case. But that case presented the question of who decides, and by who decides, I mean the court or the arbitrator for litigation related conduct. We have a 1970s case that says MND, that says it's for the court. We have a 2004 case, Transamerica, that says it's for the arbitrator. I'm wondering what your view is. Should this have gone to the arbitrator or should it stay in court? And is that before us here? I'll answer that last one first because it's not briefed by us or argued by us. And I'll give my perspective on the issue, even though it's not briefed or anything that's been talked about. The case law to me in the 8th Circuit seems fairly solid that the district court looks at whether between two types of waivers, litigation conduct waivers and perhaps other types of waivers of arbitration that might come up. And I think that your law to me is fairly uniform that the waiver by litigation conduct is decided by the district court. And Transamerica, I would view, is slightly distinguishable from that in the sense that it related to, I think, a different form of waiver. So we did not brief and argue that. Obviously, we do have a jams provision that says the arbitrator would decide issues of this. Every other type of formation argument or scope or unconscionability or adhesion would definitely be subject to the arbitrator deciding. So what I'd like to focus on on the first element that we can test, which is the substantial machinery. Guideposts, I view on consistency. The guidepost is, and largely these would come from Hooper, ABF and Dumont cases on substantial machinery. Does the motion go to jurisdiction or quasi-jurisdiction? The answer is yes. Does the motion eliminate frivolous claims and clean up the issues that might have to be arbitrated? Here it's clearly yes. After all of this time, the plaintiff dropped 49 states' allegation against us without even asserting that it was right there. They dropped the claims under the Consumer Protection Law of 47 states and dropped another substantive count. Did the defendant invoke the litigation machinery of discovery through deposition? We served no discovery and took no depositions and objected even to the discovery that was taken. If you look at Hooper, do we do issues of first impression that were argued Bristol Myers for the most part and straightforward pleading? Did we file the lawsuit? Even in Stiefel, this court held you could arbitrate even after filing a lawsuit. Does our motion to dismiss eliminate the entire case? The answer to that was no, as we've just discussed in response to Judge Smith's. And then what was the cause of the delay? I think this is extremely important because the case law is clear that you have to look at every case is different. Every case is decided on its own facts. What's the cause of delay? The cause of the delay here was a request for jurisdictional discovery by the plaintiff. I think the court is well familiar with Bristol Myers and the issue of whether out of state people can come into a state that is not the defendant's home and sue them there over unrelated conduct to the forum. So we were sued in Missouri for people all over the country. We said we're not at home in Arkansas. It's crystal clear that you can't bring these cases. And they said that they wanted discovery. And there was no discovery that could possibly change that our headquarters, as I'm sure Judge Smith is well aware, our headquarters are in Arkansas. We make our decisions in Arkansas. We're at home in Arkansas for purposes of that. But we objected to the discovery, but they were allowed to do discovery. And it didn't change a single thing. We are at home in Arkansas. They did get to take their deposition and get a few documents. But what they did in that is go from October 10th, 2018 to June 28th of 2019 and seek extensions of time to do that discovery. None of which they used. They abandoned entirely that argument as frivolous. And Judge Phillips disposed of it in a footnote saying they don't even contest it. And that is the overwhelming cost, the overwhelming delay, all of it on a meritless issue as they conceded. And we were confused on what are they trying to prove? What are they doing with all of this? Because we're at home in Arkansas. That fact's never going to change. Of course, we found out what they were doing. Counsel, this is Judge Smith. Was there anything during that time that would have prevented you from seeking arbitration? No, your honor. There's nothing that said we couldn't have done that except that we had filed a motion which we viewed on jurisdictional grounds that we thought was antecedent. But I agree, we could have filed this sooner. The question is whether we were absolutely required to under the law. And we think not. And during this delay that we would say is eight months, we were confused about what was happening. We now know what was happening, which is they found 29 plaintiffs in Arkansas with an overlapping case in a state where we are home. And so the Foster case, which we just argued, the Foster plaintiff is a Missouri plaintiff. The Foster plaintiff, the lead plaintiff in the case is from Missouri and Kansas City. And so what they've done is used the time that they got to try to show that we were at home in Missouri, apparently, but actually developed in this Foster case. And so we have a lot of issues with form here. And Foster is not the only one, because we know also that the same gift cards were at issue in a prior class action called Preston that was filed in Greene County in February of 2018. So when we talk about delay, we know that from February of 18, they filed their case on these same gift cards. As we know in state court, you get a change of judge. They took their change of judge. They got a new judge. They then decide to sue us in McCoy in June. So there's six months of delay for Preston. Well, they're just, as far as we can tell, essentially forum deciding. Then we get served in McCoy and we get all this discovery that's happening where we don't quite understand the purpose. But at the end of that, what happens is we get hit with a nationwide class action that's overlapping in Arkansas. And so we just don't think that this is a case where we're responsible for the delay. The delay is clearly, to me, Preston six months while they decided whether they liked what was going on in Greene County. Then they sue us and they say they want discovery. And then they delay from October 10th to June 28th. And then they file us against us in Arkansas. And so this is a extremely unique case. An extremely unique case because of the competing, overlapping, repetitive class actions both before our case and after our case. And Judge Smith, to your question about could we have moved, the answer is yes. But once we got the ruling that said that all of these 50 states are not at issue, and once we realized that we now had that jurisdictional issue resolved and now we're getting to the merits because we don't have that argument in Arkansas, we then immediately filed, I mean I would say immediately, very shortly thereafter filed for arbitration. So turning to the prejudice component, this court has two big decisions on standards and that's Stiefel and Kelly. Kelly is what Judge Phillips cited and Stiefel is what we cited in our brief. When they look to prejudice, they look to a few things. They talk about the idea of lost evidence. There's no lost evidence. They talk about whether you're going to have to duplicate litigation. There's no duplication required. We didn't get into the merits at all. They look at whether you litigated substantial issues on the merits. We did not get into the merits of the case at all. We didn't even take any discovery. And then what is the cause of the delay in the expense? And here, as I've covered, the cause of the delay in the expense was this discovery that they wanted to take that they ended up not using. And so with that in mind, we would say that under these unique facts, there is no substantial invocation of the machinery and we would refer the court to ABF Freight and Dumont for that and then that there is no prejudice under the standards set forth in Stiefel and it makes no sense to have a case pending in Western District of Missouri Springfield that has a direct overlapping class action by the same lawyers raising the same issue in Arkansas. So unless there's additional questions, I'll reserve my time. I don't see any. Thank you, Mr. Bennett. Mr. Brown? Good morning, your honors. Donald Brown for the plaintiffs in this case and may it please the court. Before I jump in from the beginning, I want to make sure that I address some of the items that were directly discussed in Walmart's arguments. Your honor, the first item I want to make sure the court is aware of is that this district court's order disallowing the motion to compel arbitration was ruled on, I believe in June of 2020. Let me double check that. Yeah, on June 4th 2020, your honors. We received merits-based discovery from Walmart on March 3rd 2020. They gave us requests for admissions, requests for production of documents and interrogatories all directed towards the merits of the litigation. So I think that it's a slight bit disingenuous for them to say that anything other than jurisdictional discovery was ever entered into in this case. That simply is not the case. Counsel for Walmart also mentioned count nine of the amended complaint, your honors. Count nine was a count for declaratory judgment. The plaintiff in our case acknowledged that on the back of these cards referenced terms and what basically would limit Walmart's liability for their conduct and we were seeking a declaration from the district court that these liability limitations that Walmart sought to impose were not enforceable. Walmart claims that they did not just try to dismiss count nine or seek dismiss count nine on the merits in their motion to dismiss. That is not correct. I'm going to direct the court's attention to page 120 of the appellant's appendix where section C and their suggestions as part of their motion to dismiss was that every single count of the plaintiff's complaint should be dismissed because Walmart quote cannot be held liable for criminal theft committed by third parties. That was an overriding merits-based argument for which they tried to get rid of the entire case. In the district court's order denying their motion to compel arbitration, and this is at the defendant's appendix page 320, your honors, the court makes specific note that the Walmart motion to dismiss tried to dismiss all claims for Walmart's liability based on actions of third parties because Walmart cannot be held liable for theft committed by third parties. Now, what I can't do is reconcile that with admittedly the court also saying that because the parties didn't specifically address count nine, the judge did not specifically address count nine whenever she denied the motion to dismiss. I'm sorry, your honors, but that doesn't change the fact that Walmart tried to dismiss count nine by an overreaching argument that the third party liability protection that they alleged should have every single claim dismissed. To the extent the judge simply didn't touch on that argument, I think there's no choice but to assume that the judge did not think that argument carried the water for the day and the judge disregarded that argument. So Walmart, I don't think, can genuinely claim that they did not try on the merits to get rid of every single claim in this petition. Additionally, the other merits-based arguments that Walmart made throughout their motion to dismiss, they argue that Missouri law does not permit a store operator to be liable for acts of third parties. They argue that Missouri law refuses to hold defendants liable for criminal acts of third parties. They argue that Missouri's economic loss doctrine barred plaintiff's misrepresentation and claims. They argued that the dismissal was appropriate under Missouri law because the cards were fit for their ordinary purpose for two days before the alleged deficiency. As to the unjust enrichment claims, Walmart argued that Missouri law barred the claims because Missouri pled the existence of an express contract. And so Walmart repeatedly sought to dismiss this amended complaint in its entirety. Yes, there were some jurisdictional grounds, but those were basically for the purpose of getting rid of the non-Missouri plaintiffs. And they were successful in doing that. But that doesn't change the fact that the vast majority of their motion to dismiss was aimed at getting rid of the complaint in its entirety and on the merits. And I do apologize for harping on that, your honors, but I think that's extremely important. In addition to the motion to dismiss, well, let me back up a little bit, your honors. There was more than one motion to dismiss in this case. Again, the initial complaint was, after it was removed to federal court, was followed very quickly by initial motions to dismiss by Walmart. Those motions to dismiss did not mention arbitration in one page. No arbitration mentioned whatsoever. The plaintiff relied on those motions to dismiss and took the opportunity to refine their complaint and filed the amended complaint. Subsequently, the second, I apologize, the third motion to dismiss was filed, and that's the one that was litigated to its conclusion. And the district court correctly found, I believe, that the litigation on the motion to dismiss was not merely trivial. It was merits-based, and it took several months to conclude. Counsel, this is Judge Smith. While I'm thinking about it, would you address what your position is as to what constitutes prejudice to you to enforce the arbitration provision at this point? Yes, your honor. Not surprisingly, I prefer very much the Eighth Circuit's view on prejudice, your honor. There is a small split in authority between the circuits as to what level of conduct would constitute prejudice. In the Eighth Circuit, the mere fact that Walmart tried this entire motion to dismiss on its merits to conclusion without ever mentioning arbitration one time is enough to presume prejudice to the plaintiff. There is a case, your honor. It's the Wheeling Hospital Incorporated case that Walmart cites, stating that this court should use a much higher standard. Going back to Hooper, your honor, which we believe is obviously the controlling case on this, Hooper restates the Eighth Circuit's opinion that the prejudice threshold is not onerous. In the Hooper case, they said there does need to be some evidence of prejudice, but not that much. The Walmart would have the court follow the Fourth Circuit's precedent in the Wheeler case where they require a substantial showing of prejudice, of actual prejudice, before they are issued a waiver in favor of the parties seeking the waiver. As a matter of fact, in the Hooper case or in the Fourth Circuit Wheeling case itself, the Fourth Circuit says, although some of our sister circuits have held that the non-moving party is prejudiced when the party seeking to arbitrate litigates substantial issues on the merits, we have never adopted that position. And that's the Fourth Circuit talking, and they specifically link to the Eighth Circuit whenever they say that they do not follow the Eighth Circuit standard when it comes to showing prejudice. So, I'm sorry if I'm rambling, your honor, but to answer your question, I think that prejudice doesn't require much in the Eighth Circuit, and the fact that Walmart litigated this motion to dismiss on the merits all the way to conclusion is enough by itself to show prejudice. Counsel, your view may be that this isn't necessary, but as I mentioned, we've had at least two waiver cases this week, and so I want to make sure I have it straight. Was there any finding about how much in attorney fees were spent opposing Walmart before the district court? Your honor, I don't believe, going off of memory, your honor, I don't believe the court's opinion actually states how much was spent in attorney's fees, getting to the point that we're at. What I can tell the court affirmatively, though, is that in responding, plaintiff's counsel did present an affidavit to the court, and I believe it's in the appendix, where we did show how much in attorney's fees that the plaintiff would have racked up. So the question you're talking about was addressed to the court in the record. I don't think she expressly stated that in her opinion, but I know it was in front of the court, your honor. How much was it? I mean, we can consider the record, so what did that affidavit or declaration say? So on March 12th of 2020, your honor, whenever we were responsibly briefing our motion to compel, we argued that the plaintiff had incurred at that point approximately $163,255 in attorney's fees at the attorney's contract rate, and it would have been $15,472 in expenses, your honor, and that was in front of the court and in the record. Addressing another point made by Walmart, your honors, counsel for Walmart stated that this motion to dismiss that they filed was merely something to clean up the case and, by golly, get it ready so they could move to arbitrate. They claimed that, yes, they had some 12b6 merits-based motions in there or merits-based arguments in there, but the procedures required them to do that. They couldn't leave them out. There's something else they couldn't leave out, your honor, but they did, and that was putting the plaintiff on notice that they intended to require arbitration. There is nothing that Walmart did from the beginning of this case to when they filed their well after the merits-based motion to dismiss was adjudicated that they ever intended to seek arbitration. So, they were keenly aware that they needed to file a rule 12b6 motion, but yet they weren't keenly aware that they needed to preserve the arbitration argument. Appellate's counsel mentioned a number of claims that were dismissed on the basis of those 12b motions. What portion of the case would that define in terms of the claims made? So, really, your honor, the only thing that was really taken away was count eight, which was for conversion. We dismissed, I believe the plaintiffs voluntarily dismissed counts two and seven, but the only count that the court took away was count eight for conversion. Now, they did take away all of the non-Missouri plaintiffs, which is exactly why the plaintiff filed the separate count in Arkansas, and I think it needs to be noted that the sister case that you guys are deciding today in the Foster decision was filed after the court ruled on its motion on the Walmart motion to dismiss, and the non-Missouri plaintiffs were taken away. So, after that, the Arkansas case was dismissed. And making sure, I see I only have a minute left, so I'm making sure I hit every topic that I need to, your honors. Other than the Wheeler case, the plaintiffs rely heavily on Dumont and the ABF Freight Systems case. Both of those cases are highly distinguishable from the case we have before you today. On the Dumont decision, your honors, the court found that the defendant filed its motion to dismiss on jurisdictional and quasi-jurisdictional grounds. Also, the defendant in that case offered an express warning that it would seek a motion to compel arbitration as part of its motion to dismiss. That did not happen here, your honors. Also, in the ABF Freight Systems case, that case dealt solely with issues of contract formation and standing, and there was, well, I guess I'm out of time, your honors. So, if there's any questions, I'm happy to answer them, but thank you for your time in considering this case. Thank you, Mr. Brown. Thank you, Judge Smith. To cover these things sequentially, the correct date for the judge's motion is in August, August 12th of 2019. The final brief wasn't filed until June, and you can see in the docket, which is, of course, the first part of the appendix, that we didn't even do Rule 26 disclosures before then. When you look at the Appendix 12, what you can see is the judge first rules on the motion, and then we don't do Rule 26 disclosures, which is, of course, the kickoff to discovery. All discovery participants... me about this case. Walmart says in its answer that we have this right to arbitration, and we recognize it, and then we have three motions to dismiss throughout the litigation, and it takes about a year, eight months, whatever you want to call it, eight months, 17 months. There's differing opinions on how long it was. That bothers me from a waiver viewpoint. You knew about it on the front end, but you didn't invoke it until much later. You know, respond to that and make me feel better about it. Absolutely, and it's an easy one because we didn't answer, because we filed the jurisdictional motion, which, of course, excuses answers, and Judge Phillips then says no discovery either, and so we didn't file our answer until right before we filed our motion to compel arbitration. We filed an initial answer, and then by October or so, we amended and added the arbitration, and then we filed right away, so there was no assertion at the beginning of the case, and in fact, Hooper says that's a negative if you put it in there and do that, so as soon as we answered, we didn't have to answer for a long time, and the reason we didn't have to answer for a long time goes to essentially my core argument, which is all of this delay from October all the way to June and then to August when we lost was because the plaintiffs claimed they wanted discovery on a jurisdictional point that was so frivolous that they abandoned it the 29 plaintiffs that sued us in Arkansas. The idea of attorney's fees goes to that too, Judge Strauss, which is, yes, they said they had $163,000, which they said, quote, for the district court litigation, but what the case law requires is that it has to be stuff that we required. They did their depositions on jurisdiction, and they filed motions about discovery on jurisdiction and then totally abandoned it. We did not do that. We did not serve that discovery. We did not participate in it. We did not take a deposition. All we did was file a motion that was, from my perspective as the person who filed it, directed at eliminating 49 states that were outside of it, and to go to Judge Smith's question, there was a very good thing that came out of that, which was the case was defined to be just Missouri, and once it was so defined and the meritless jurisdiction argument was abandoned by them and the judge didn't even have to rule on that, we filed our motion to compel arbitration right after that. Thank you, Your Honor. Thank you, Mr. Bennett. Thank you also, Mr. Brown. The court appreciates both counsel's presentations to the court today and argument of the issues. The briefing that's been submitted, we will take the case under advisement and render a decision in due course. Thank you. Thank you. Thank you, Your Honors.